IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VIDALINA SOTO,

    Plaintiff

    v.

STATE CHEMICAL SALES COMPANY
INTERNATIONAL, INC., et al.,

    Defendants

CIVIL NO. 09-1270 (JP)

## **OPINION AND ORDER**

Before the Court is a motion to dismiss and compel arbitration filed by Defendants State Chemical Sales Company, International, Inc. ("State Chemical"), Carlos Javier Concepción, and his conjugal partnership (**No. 7**). Also before the Court is Plaintiff Vidalina Soto's ("Soto") response in opposition (No. 11) to the motion, and Defendants' reply (No. 15). Plaintiff Soto filed the instant complaint alleging claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), as well as several provisions of Puerto Rico law and the Puerto Rico Constitution. Defendants move for dismissal of the complaint on the basis that the parties entered into an arbitration agreement, and Plaintiff has not pursued the arbitration process established in said agreement. For the reasons stated herein, Defendants' motion to dismiss and compel arbitration is hereby **GRANTED.**

CIVIL NO. 09-1270 (JP)          -2-

I.   **FACTUAL ALLEGATIONS**

Plaintiff Soto alleges that she began working for Defendant State Chemical and Defendant State Industrial Products Corp. ("State Industrial") as a salesperson on March 2, 1992. Since 1997, Plaintiff alleges that she has suffered from disabling health conditions including lumbar herniation, cervical herniation, carpal tunnel syndrome, and rheumatoid arthritis. Despite the limitations caused by her disabilities, Plaintiff is capable of performing her essential job junctions.

Plaintiff alleges that she has been subjected to discrimination by Defendants on the basis of her disabilities. In particular, Plaintiff alleges that Defendants have discontinued paying her commissions, subjected her to mocking by managers and warehouse personnel, stopped providing the employer contribution to Plaintiff's health plan, and given Plaintiff low priority in the dispatch of products of merchandise, among other actions. In addition, Plaintiff alleges that certain managers have provided false information to Defendants' corporate offices in order to make her employer unjustifiably upset with her.

II.  **LEGAL STANDARD FOR ORDER COMPELLING ARBITRATION**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), establishes the validity and enforceability of written arbitration agreements. The FAA provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as

CIVIL NO. 09-1270 (JP)            -3-

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA expresses a congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. Buckeye Cash Checking, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). The FAA mandates the district court to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district court's discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 4; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The existence of a valid arbitration agreement is premised on the consent of the parties to arbitrate at least some of their claims and thereby forego a judicial remedy for those claims. McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) (citing AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986)).

Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements that must be satisfied for a court to grant a motion to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

CIVIL NO. 09-1270 (JP)          -4-

As to the first prong of the <u>InterGen N.V.</u> test, *supra*, state contract law principles govern the validity of an arbitration agreement. <u>Campbell v. Gen. Dynamics Gov't Sys. Corp.</u>, 407 F.3d 546, 551 (1st Cir. 2005); <u>see</u> 9 U.S.C. § 2. Under Puerto Rico law, the elements of a valid contract are the following: (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation. P.R. Laws Ann. tit. 31, § 3391. Under Puerto Rico law, consent of a party is invalid only if "given by error, under violence, by intimidation, or deceit." P.R. Laws Ann. tit. 31, § 3404; <u>Sánchez-Santiago v. Guess, Inc.</u>, 512 F. Supp. 2d 75, 79 (D.P.R. 2007).

### III. **ANALYSIS**

#### A. **Existence of Arbitration Agreement**

Defendants argue that Plaintiff should be compelled to pursue arbitration prior to bringing an action in court for her discrimination claims. In support of this argument, Defendants allege that on June 15, 1996, Plaintiff Soto signed a written acknowledgment of her understanding and consent to the State Industrial alternative dispute resolution program. Said acknowledgment stated:

> I have received and read the alternative dispute resolution program of State Industrial Products ("ADR Program").
>
> I understand that it is a three-step program consisting of:

CIVIL NO. 09-1270 (JP)        -5-

>    1.   Internal negotiation;
>
>    2.   Mediation conducted by an independent, neutral third party; and;
>
>    3.   Arbitration before an independent, neutral third party.
>
> I understand that if I am employed by State Industrial Products prior to January 1, 1996, I will retain all my rights to go to court if I so desire at the conclusion of the ADR program.

In addition, Defendants allege that on the same date Plaintiff signed a written acknowledgment of having attended a meeting regarding the alternative dispute resolution program. Said acknowledgment stated:

> I acknowledge that on June 15, 1996, I attended a meeting in which State Industrial Product's [sic] Dispute Resolution Program was described. I also acknowledge that on this date I received a copy of the State Industrial Products Dispute Resolution Program.

Finally, Plaintiff also signed an Employment Agreement on March 1, 2001, which included a provision stating:

> I understand that the Company has a three-step Alternative Dispute Resolution Program for its employees consisting of 1. negotiation, 2. mediation, and 3. final and binding arbitration. In consideration for my employment or continued employment by the Company, I agree that this will be my exclusive means of making any employment-related claim against the Company, as set forth in more detail in the State Industrial Products Dispute Resolution Program, a copy of which I have been provided.

Plaintiff Soto does not dispute that she signed each of the agreements referenced by Defendants. Instead, Plaintiff argues that the arbitration agreement is invalid. The Court will now proceed to

CIVIL NO. 09-1270 (JP)          -6-

consider Plaintiff's arguments regarding the validity of the arbitration agreement.

### B. Validity of Arbitration Agreement

Plaintiff argues that the agreements to arbitrate are invalid because: (1) she was coerced into signing them with a threat that she would lose her job if she did not sign; (2) she did not fully understand the agreements because they were prepared in English; and (3) she did not receive any consideration in exchange for waiver of her legal rights.

#### 1. Coercion

Plaintiff Soto contends that her consent to the arbitration agreement is invalid because she was coerced into signing them under threat of losing her job. Under Puerto Rico law, consent of a party is invalid only if "given by error, under violence, by intimidation, or deceit." P.R. Laws Ann. tit. 31, § 3404; <u>Sánchez-Santiago v. Guess, Inc.</u>, 512 F. Supp. 2d 75, 79 (D.P.R. 2007). Intimidation exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants. P.R. Laws Ann. tit. 31, § 3406.

Plaintiff argues that in the instant case she gave her consent to arbitrate as a result of intimidation. Specifically, Plaintiff argues that she was subjected to intimidation because she was told

CIVIL NO. 09-1270 (JP)          -7-

that she had to sign the documents in order to keep her job. Defendants acknowledge that signing the arbitration agreement was a condition of continued employment. Therefore, the only issue is whether imposing such a condition may be construed as inspiring a reasonable and well-grounded fear of suffering an imminent and serious injury to Plaintiff's person or property.

The Court cannot accept Plaintiff's attempt to fit her circumstances into this definition. Certainly Plaintiff had no reason to fear injury to her person. As to an injury to her property, her employer was not threatening to take any of Plaintiff's tangible property. Even if the Court were to assume that Plaintiff's interest in her job was a form of property, she was given numerous opportunities to consider, free from intimidation, whether she wanted to continue working and accept the arbitration agreement. Plaintiff's employer held meetings to educate employees regarding the agreement, and provided copies of the agreement to Plaintiff for her consideration. These circumstances could not have created a well-grounded fear of suffering an imminent and serious injury. Rather, Plaintiff was given the resources to calmly consider her options and decide the best course of action.[1] As such, the Court

---

1.   See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999) (finding that although employer acknowledged that it would not employ individuals who refused to sign arbitration agreement, said agreement was enforceable and not unconscionable).

CIVIL NO. 09-1270 (JP)          -8-

finds that the arbitration agreement cannot be invalidated on the basis of alleged lack of consent due to intimidation.

### 2.  Validity of English Language Agreement

Plaintiff also argues that her consent to the arbitration agreement was invalid because said agreement was written in English, a language Plaintiff alleges she does not fully comprehend. As discussed above, Puerto Rico law states that consent to a contract is invalid only if "given by error, under violence, by intimidation, or deceit." P.R. Laws Ann. tit. 31, § 3404. That a document is written in a different language certainly does not constitute violence or intimidation. Nor do such circumstances constitute deceit. Plaintiff was aware of her own language abilities and could have requested clarification of anything that she did not understand fully. As such, no one deceived Plaintiff to obtain her consent to the arbitration agreement.

With regard to error, Plaintiff signed documents regarding the arbitration program on at least three separate occasions. She also attended a meeting regarding the program and acknowledged in writing having attended said meeting and received a copy of the arbitration program. On the basis of these undisputed facts, the Court cannot find that Plaintiff's consent was given in error. <u>See Sánchez-Santiago v. Guess, Inc.</u>, 512 F. Supp. 2d 75, 80 (D.P.R. 2007) (finding employee's consent to arbitration agreement valid and

CIVIL NO. 09-1270 (JP)          -9-

rejecting argument that alleged lack of familiarity with English negated consent).

### 3. Lack of Consideration

Plaintiff argues that the arbitration agreement is not a valid contract because she did not receive any consideration in exchange for waiver of her recourse to litigation. Under Puerto Rico law, one of the requirements for a valid contract is a "cause for the obligation." P.R. Laws Ann. tit. 31, § 3391. Here, there are two potential forms of consideration that Plaintiff received in exchange for her agreement to arbitrate. First, as Plaintiff has emphasized, she received continued employment in exchange for signing the arbitration agreement. The parties have cited conflicting case law regarding whether or not a promise of continued employment constitutes adequate consideration. This dispute is not determinative, however, because Plaintiff also received consideration in the form of her employer's promise to give up its own legal recourse to litigation. See Betancourt v. Ace Ins. Co. of Puerto Rico, 313 F. Supp. 2d 32, 34-35 (adopting Magistrate Judge's report and recommendation finding that mutual promises to arbitrate employment disputes constitute adequate consideration for each party).

### C. Additional Requirements for Motion to Compel Arbitration

In addition to the existence of a valid arbitration agreement, a motion to compel arbitration is subject to the following

CIVIL NO. 09-1270 (JP)          -10-

requirements: (1) the moving party must be entitled to invoke the arbitration clause; (2) the other party must be bound by the clause; and (3) the claim must fall within the scope of the arbitration clause. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

In the instant case, the parties do not dispute these additional requirements, and they are easily met.  First, Defendants are entitled to invoke the arbitration clause because State Industrial is a party to the agreement, and the agreement specifically applies to disagreements relating to employment at State Industrial and its affiliated companies, including State Chemical.  Second, Plaintiff is bound by the clause because she signed the valid arbitration agreement. Finally, Plaintiff's claims of employment discrimination fall within the scope of the arbitration clause, which applies to any claim, question, or disagreement arising out of Plaintiff's employment with Defendants.

**IV.  CONCLUSION**

In conclusion, the Court hereby **GRANTS** Defendants' motion to dismiss and compel arbitration.  The Court will enter a separate judgment dismissing Plaintiff's complaint without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of March, 2010.

                                        s/Jaime Pieras, Jr.
                                         JAIME PIERAS, JR.
                                U.S. SENIOR DISTRICT JUDGE